387 S.E.2d 804

### In re SHARON K.

### No. 18992.

Supreme Court of Appeals
of West Virginia.

Dec. 7, 1989.

C. Cooper Fulton, West Virginia Advocates, Charleston, for Sharon K.

Joseph Troisi, Asst. Pros. Atty., Keith White, St. Marys, for appellee.

NEELY, Justice.

Sharon K. is a severely retarded, multiply-handicapped twenty-four-year-old woman. She was admitted to Colin Anderson Center in August 1972, at the age of seven, because her mother could no longer care for her at home. She currently lives in a room on the North Living Area of Colin Anderson Center that houses eleven other residents and is usually staffed by two persons, neither of whom is a registered nurse or licensed practical nurse.

The North Living Area is an uncertified part of Colin Anderson Center, which means that it does not meet the federal minimum standards for staffing and physical facilities that would entitle it to receive Medicaid reimbursement. Under the terms of the consent decree entered in *E.H. v. Matin*, (on remand to the Circuit Court of Kanawha County, Civil Action No. Misc–81–585, consent order entered 15 November 1981), both the North and South Living Areas were required to be closed by 30 June 1989. This deadline, however, has been extended.

On 2 December 1987 a regular, periodic involuntary commitment proceeding was initiated against Sharon K. by staff persons at Colin Anderson Center. The commitment hearing was set for 29 December and the Mental Hygiene Commissioner sent Sharon K. notice that counsel had been appointed for her. Shortly thereafter, Sharon Hancock Burleson, Sharon K.'s advocate under the provisions of *Medley v. Willis Miller* [Civil Action No. 78–2099 CH (S.D.W.Va.), Consent Decree entered 8 October 1981], contacted Ms. C. Cooper Fulton of West Virginia Advocates, who was the Medley advocates project director. Ms. Burleson informed Ms. Fulton of the scheduled hearing and asked Ms. Fulton to represent Sharon K. at the commitment hearing pursuant to the provisions of the advocacy project contract for the West Virginia Department of Health. Ms. Burleson informed Ms. Fulton that appropriate community services were available for Sharon K. and that placement had been impossible

because her legal guardian was unwilling to consent to community placement.

On 24 December Ms. Fulton filed a Notice of Appearance and a Motion for Continuance. The motion was granted and the hearing rescheduled for 6 January 1988. Appointed counsel was released. On 6 January 1988 a hearing was held before the Mental Hygiene Commissioner of Pleasants County. Witnesses for the hospital testified that Sharon K. is mentally retarded and that they knew of no less restrictive alternative to commitment at Colin Anderson Center. No testimony was offered concerning any available less restrictive placement having been considered. Sharon K.'s parents testified that they were satisfied with the care their daughter receives at Colin Anderson Center and that they want her to remain there. The advocate's witnesses testified that Eastern Panhandle Training Center had developed a community placement specifically for Sharon K. and other persons with similar needs. Those witnesses also testified that the proposed placement could meet Sharon K.'s needs and that it was a less restrictive alternative but, because her mother, who is her legal guardian, refused to consent to placement voluntarily, Sharon K. should be committed there involuntarily.

On 13 January 1988 the hearing was reconvened after briefs had been submitted to the commissioner. The prosecutor moved to reopen the hearing for the taking of further evidence that he claimed had become available after the previous hearing. The commissioner ruled that the hearing would be reopened—but only for the purpose of presenting the newly discovered evidence and for rebuttal of an affidavit submitted by Ms. Fulton.

The hearing reconvened on 21 January 1988. At the close of the evidence the commissioner stated that the evidence presented did not constitute clear and convincing evidence that there is no less restrictive alternative. Therefore, he announced that he intended to make a recommendation to commit Sharon K. to a less restrictive alternative. On 26 January the commissioner sent his draft findings of fact

and recommendations to counsel, and both counsel submitted objections, proposed amendments, and proposed additional findings. On 1 February the commissioner submitted his Findings of Fact and Recommendation to the Circuit Court of Pleasants County. The commissioner recommended that Sharon K. be involuntarily committed "to Eastern Panhandle Training Center or such other facility deemed by the West Virginia Department of Health to be appropriate," that she remain at Colin Anderson Center during the interim needed to make the necessary arrangements for placement, and that the court convene a review hearing ninety days after placement.

On 2 February the circuit court entered an Order adopting the commissioner's findings of fact but rejecting his recommendation. The order stated:

> The Court notes that both the natural mother and natural father of said respondent oppose her commitment to the Eastern Panhandle Training Center and believe that the best interest of their daughter would not be served by her transfer from Colin Anderson Center at this time. From facts so far found in this case, the Court is inclined to agree with the position taken by the respondent's parents and permit said child to remain at Colin Anderson Center.

The court then reappointed Keith White, a lawyer, to represent Sharon K. "in addition to the representation to be furnished by Attorney C. Cooper Fulton" and remanded the case for the taking of further evidence on "the long-term and short-term medical and nonmedical needs" of Sharon K. and the ability of Eastern Panhandle Training Center to meet those needs.

The hearing resumed on 7 April 1988. The prosecutor called no witnesses; however, Ms. Fulton presented testimony by a physician who had done an independent medical evaluation of Sharon K. and testimony by Eastern Panhandle Training Center staff as to the ability of the Training Center to meet Sharon K.'s medical and nonmedical needs. Mr. White, the court-appointed attorney representing Sharon K., called Sharon K.'s mother, stepmother, and

father, who all testified that they had visited the proposed placement and still opposed placement there.

Sharon K.'s father and stepmother testified that they had visited the facility and taken photographs in accordance with Mr. White's advice. Mr. White offered three photographs into evidence and made the rest available to other counsel. The prosecutor entered the remaining photographs into evidence. The hearing lasted all day and was initially concluded on 11 April 1988 when Mr. White called a Colin Anderson Center staff person to critique the proposed placement. At the conclusion of the hearing, the commissioner stated he did not intend to make any additional recommendation to the court, that counsel would be permitted to propose additional findings of fact or amendments to his draft, and that all proposed findings that were rejected would be noted in the record.

The prosecutor proposed substantial additional findings, all of which were adopted. Ms. Fulton also proposed modifications and additions, most of which were adopted. On 12 May 1988 the mental hygiene commissioner filed a forty-page document entitled "Additional Findings of Fact" with the circuit court. In it he stated that he rejected, as not supported by the evidence, two findings of fact proposed by Mr. White, one that the proposed placement was not medically or educationally appropriate for Sharon K. and one that there is no less restrictive placement to Colin Anderson Center that is available and appropriate.

On 13 May 1988 the circuit court entered an Order adopting the mental hygiene commissioner's Additional Findings of Fact and ordering Sharon K. committed to Colin Anderson Center. The Order contains no discussion of facts but merely states that the proposed placement is incapable of meeting all Sharon K.'s medical and nonmedical needs and "is neither a viable nor an appropriate less restrictive alternative." The Order also states that there is not a less restrictive alternative than commitment for Sharon K.

In this case counsel have made much of what was and wasn't proven before the mental hygiene commissioner and have objected to various findings of fact and conclusions. Nonetheless, we find that the facts are sufficiently clear that we can conclude that the circuit court did not abuse its discretion in committing Sharon K. to Colin Anderson. Although the law favors the least restrictive alternative for involuntarily committed mental patients, nonetheless there are some circumstances in which commitment to a mental hospital with appropriate life support equipment and immediate availability of medical staff is essential. Certainly we do not imply that Colin Anderson Center is in any way an acceptable facility for involuntarily committed patients as it is currently staffed and funded; however, we find that the circuit court was correct in determining that as between Colin Anderson and the Eastern Panhandle Center, Colin Anderson was preferable for Sharon K.

Sharon K. is not only profoundly mentally retarded, but she also suffers from cerebral palsy, spastic quadriplegia and convulsive seizure disorders, and is susceptible to respiratory infections and pneumonia. She is currently under medication that requires constant monitoring. Sharon K. requires twenty-four-hour-a-day nursing supervision with the actual hour-to-hour, day-to-day care provided either by nurses or trained persons such as nurses' aides. This nursing supervision requires administering medicine and suctioning, and her medical condition requires that she have a physician who is willing to assume responsibility for her. When not in a crib, Sharon K. is confined to a wheelchair and cannot eat by mouth. Although she currently lives in a room on the North Living Area of Colin Anderson Center that is usually staffed by two persons, neither of whom is a registered nurse or licensed practical nurse, she is still only twenty-two to twenty-five feet from a doctor or nurse.

The closest hospitals to Colin Anderson Center are located in Parkersburg, thirty miles away, and Sistersville, ten miles away. There is an infirmary at Colin Anderson Center, but it does not have the intensive monitoring that would be avail-

able in a community hospital, nor does it have the capacity to perform emergency intubation and resuscitation; however, the infirmary is staffed by a medical doctor twenty-four hours a day.

Sharon K.'s individual program plan requires that any placement provide a monitor of seizures and anti-convulsant medications, monitoring of her airways, and monitoring of her position. She is also required to have oxygen equipment and suctioning equipment available. Therefore, for proper treatment of Sharon K. it is necessary to have a suction machine, humidifier, and oxygen available along with personnel able to use that equipment.

The proposed less-restrictive placement for Sharon K. is a three-bedroom house near Hedgesville, West Virginia, called Farris Wheel. The house is not barrier-free in that it has a large front step; however, there is an attached garage that allows patients to leave the house without going outside in inclement weather. Patients must leave Farris Wheel for physical therapy, education, or rehabilitation. The house is staffed twenty-four hours a day with two staff persons on duty during all waking hours. However, only one staff person is on duty at night, and four times a week that person is only a nurse's aide. The registered nurse employed at Farris Wheel also does consulting work and is not a full-time employee of the Eastern Panhandle Training Center.

Farris Wheel is supplied with portable oxygen machines, suctioning machines, vaporizers, and a pulmonary machine. Nonetheless, the lower court was entitled to conclude from the evidence that in an emergency, this equipment might be useless because there might be no one available trained to use it.

In Syllabus Point 4, *Markey v. Wachtel*, 164 W.Va. 45, 264 S.E.2d 437 (1979), we held:

The requirement of West Virginia Code, 27–5–4(j), which mandates that the Mental Hygiene Commissioner shall determine if there are less restrictive alternatives available, has a corollary that a good faith effort must be made to find a placement in a less restrictive alternative, and that such search must encompass a reasonably broad geographic area.

At least since *State ex rel. Hawks v. Lazaro*, 157 W.Va. 417, 202 S.E.2d 109 (1974), this court has been committed to the humane treatment of involuntarily-committed patients and we have generally considered that one aspect of such humane treatment is commitment to the least restrictive alternative. *W.Va.Code*, 27–5–4(j)(2) [1981].

There are cases, however, such as the one now before us, where the medical problems are so overwhelming and the need for constant professional monitoring so acute that there is no choice but a hospital commitment. The evidence before us indicates that the Farris Wheel house does not have a doctor available at all times. Although a doctor may be summoned from an adjoining town, and a patient may be transported to a hospital in Martinsburg, the response times involved are substantially greater than at Colin Anderson Center. And, although Colin Anderson Center is not anybody's idea of even a marginally acceptable hospital, it is nonetheless the better of the two alternatives that were the center of the proceedings below. It is also significant that the individual plan worked up for Sharon K., as required in the *Medley* consent decree, *supra,* called for her parents' participation in placement decisions. Their opposition to Sharon K.'s placement at Farris Wheel is an important consideration for this Court.

This state's public health system calls for the least restrictive *appropriate* placement. *W.Va.Code*, 27–5–4 [1981]. The circuit court properly considered not just restrictiveness, but also appropriateness. This is consistent with the federal civil rights of the developmentally disabled. 42 U.S.C. § 6009 [1984].

Accordingly, for the reasons set forth above, the judgment of the Circuit Court of Pleasants County is affirmed.

Affirmed.